IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DARRYL W. BENOIT, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. H-07-02939 |
| v. § | |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 15) and Defendant's Cross-Motion for Summary Judgment (Docket Entry No. 11). The court has considered the motions, all relevant filings, the administrative record, and the applicable law. For the reasons set forth below, Plaintiff's motion is **GRANTED**, Defendant's cross-motion is **DENIED**, and the case is **REMANDED** to the Commissioner for reconsideration consistent with this opinion.

**I. Case Background**

Plaintiff Darryl Benoit ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgement, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 7.

claim for supplemental security income and insurance benefits under Title II and Title XVI of the Social Security Act ("the Act").

**A.  Procedural History**

Plaintiff filed for disability benefits on March 14, 2005, claiming an inability to work since June 30, 2004, as a result of back pain.[2] In his request for reconsideration, Plaintiff included cardiac problems.[3] After the application was denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[4] The ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas, on February 22, 2007.[5] After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on March 16, 2007.[6] The ALJ found Plaintiff was not disabled at any time during the period covered by his application, and Plaintiff appealed that decision on March 27, 2007.[7]

On July 23, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's

---

[2]   Transcript of the Administrative Proceedings ("Tr.") 106.

[3]   Tr. 62.

[4]   See Tr. 51-55.

[5]   Tr. 26-32, 309.

[6]   See Tr. 14-22.

[7]   Tr. 10.

decision the final decision of the Commissioner.[8]  Plaintiff filed this timely civil action for judicial review of the Commissioner's unfavorable decision.

**B. Factual History**

1. Plaintiff's Age, Education, and Work Experience

Plaintiff was born on August 31, 1960, and was forty-six years old on the date of the ALJ's decision.[9]  He claims he became unable to work on June 30, 2004.[10]  In addition to completing the ninth grade, Plaintiff obtained vocational training.[11]  Prior to the onset of his alleged disability, Plaintiff was employed as a cook for one year, a security guard for approximately two years, a janitor for two years, and a mover for six years.[12]

2. Plaintiff's Testimony

During the hearing, the ALJ solicited testimony from Plaintiff, his mother, a medical expert ("ME"), and a vocational expert ("VE").  Plaintiff testified to suffering from heart pain, stating he would require revision surgery for a previous heart valve replacement.[13]  Plaintiff further testified that he suffered

---

[8]  Tr. 3.

[9]  Tr. 22, 97.

[10]  Tr. 97.

[11]  Tr. 111. Plaintiff obtained building maintenance training.

[12]  Tr. 107.

[13]  Tr. 320-21.

from back pain in his lumbar spine.[14]

Regarding his physical activities, Plaintiff stated that he had to rest after walking a block.[15] Plaintiff also testified that he could not play with his children without becoming tired and having to sit down because of his heart pain.[16] He testified that prolonged sitting or standing caused pain related to his back injury.[17] Plaintiff further testified that he was unable to lift more than five pounds.[18]

### 3. Medical Records

On March 9, 2001, Plaintiff complained of lower back pain in relation to an injury suffered on January 31, 2001.[19] On November 14, 2001, Plaintiff was evaluated by Troy Clark, D.C., ("Dr. Clark) a representative of the Texas Workers' Compensation Commission. Plaintiff continued to complain of lower back pain, resulting in sleep loss and occasional pain radiating down his right anterior thigh.[20] Dr. Clark found that Plaintiff had fully recovered from his January 31 injury, and considered Plaintiff's behavior

---

[14]   Tr. 323.

[15]   Tr. 322.

[16]   Id.

[17]   Tr. 323.

[18]   Id.

[19]   Tr. 132-33.

[20]   Tr. 118.

inconsistent with his description of his pain and related symptoms.[21] Dr. Clark assigned Plaintiff a zero percent Whole Person Impairment (WPI) and advised that Plaintiff was capable of returning to full work duties.[22]

On February 10, 2005, Plaintiff was admitted to the Christus St. Joseph Hospital Emergency Room, complaining of chest pain.[23]

On April 6, 2005, Plaintiff underwent heart valve replacement surgery at The Methodist Hospital.[24] The surgery repaired a saccular aneurysm at the aortimitral junction and required the replacement of Plaintiff's aortic valve.[25] Post-surgery examinations revealed that Plaintiff's heart remained significantly enlarged.[26] Further examinations six days after the surgery found Plaintiff's left ventricle severely enlarged, with its functioning depressed.[27] Plaintiff's ejection fraction[28] in his left ventricle was between twenty and twenty-five percent.[29] Plaintiff was

---

[21]   Tr. 120.

[22]   Id.

[23]   Tr. 159.

[24]   Tr. 235.

[25]   Tr. 238.

[26]   Tr. 244.

[27]   Tr. 240.

[28]   An ejection fraction is "the proportion of blood that is ejected during each ventricular contraction compared with the total ventricular volume." Mosby's Pocket Dictionary of Medicine, Nursing, & Allied Health 306 (1st ed. 1990).

[29]   Tr. 240.

discharged on April 15, 2005.[30]

On April 25, 2005, Plaintiff was re-admitted to The Methodist Hospital, complaining of moderate, general weakness and decreased ability to stand.  Rutherford Huey, M.D., stated that Plaintiff's heart was enlarged, and his diaphragm and cardiac margin were obscured.[31]  The Methodist Hospital diagnosed Plaintiff with acute hypotension and weakness.[32]

On May 16, 2005, Plaintiff received an echocardiogram at Ben Taub Hospital to determine the status of his heart following his surgery.[33]  Plaintiff's left ventricle remained dilated, and its function was severely reduced.[34]  On May 22, 2005, Plaintiff was re-evaluated at Ben Taub Hospital regarding his ventricular function and valves.[35]  While Plaintiff's left ventricle remained enlarged, Ben Taub Hospital's echocardiography report stated that his ejection fraction had improved to forty to forty-four percent, meaning the ventricular function was only mildly reduced.[36]  While recognizing improvement, the interpretation summary stated that an

---

[30]     Tr. 238.

[31]     Tr. 171.

[32]     Tr. 177.

[33]     Tr. 255.

[34]     Id.

[35]     Tr. 253.

[36]     Id.

abnormal flow remained in the left ventricle outflow tract into the left atrium.[37]

On August 22, 2005, Plaintiff met with Manoj Vakil, M.D., ("Dr. Vakil") at the Northwest Medical Clinic in Houston, Texas. Plaintiff complained of chest tightness following his April surgery.[38] Plaintiff claimed that he was out of breath after walking a block and that his pain increased if he sat or stood in one position for thirty minutes without support.[39] Dr. Vakil stated that he believed Plaintiff's chest pain was related to his recent surgery and that Plaintiff's shortness of breath could be due to cardiomegaly.[40]

Plaintiff received a Residual Functional Capacity ("RFC") Assessment, completed by Scott Spoor, M.D., ("Dr. Spoor") on August 29, 2005, to evaluate Plaintiff's recovery from his April heart surgery.[41] Dr. Spoor's assessment stated that Plaintiff could occasionally lift fifty pounds, frequently carry twenty-five pounds, and was able to sit or stand for about six hours in an eight-hour workday.[42] Dr. Spoor noted that Plaintiff suffered from

---

[37]    Tr. 254.

[38]    Tr. 178.

[39]    Id.

[40]    Tr. 180.

[41]    Tr. 182-89.

[42]    Tr. 183.

an enlarged heart and chest pain related to his recent surgery.[43]

Plaintiff's records established that he was approximately five feet, eight inches tall and typically weighed between approximately 140 and 178 pounds.[44]

### 4. Medical Expert's ("ME") Testimony

Based on his review of the medical evidence, the ME testified at the hearing that the record revealed that Plaintiff had a history of heart problems.[45] The ME summarized Plaintiff's remaining symptoms but noted that Plaintiff's ejection fraction (in Plaintiff's left ventricle) had improved since his surgery.[46] The ME stated that based on the record, there was not evidence that a revision surgery was necessary.[47]

The ME evaluated whether Plaintiff met Listing 4.10, aneurysm of Aorta or other branches, in the regulations (the "Listings").[48] The ME noted that while Plaintiff may have at one time met the listing, he had improved since his surgery and would no longer meet Listing 4.10.[49] The ME noted that if Plaintiff required additional

---

[43] Id.

[44] Tr. 120, 178.

[45] Tr. 314.

[46] Tr. 313-14.

[47] Tr. 314.

[48] Tr. 315; see also C.F.R. Pt. 404, Subpt. P, App. 1.

[49] Tr. 315.

surgery, he would meet Listing 4.10.[50]

The ME also considered Plaintiff's symptoms to be less than those required to meet Listing 4.02, chronic heart failure.[51] Plaintiff's low ejection fraction from his early post-surgery cardiogram was low enough to meet the listing's thirty percent or less requirement, when it was only twenty to twenty-four percent.[52] The ME noted, however, that Plaintiff's ejection fraction had improved to around forty percent, which did not meet the requirements for Listing 4.02.[53] The ME noted that Plaintiff did have an enlarged left ventricle, but noted that Plaintiff's symptoms failed to meet the criteria of the listing.[54] The ME recognized that critical information relating to Plaintiff's most recent visit to the clinic was missing and that this information could determine whether Plaintiff required a revision surgery.[55]

The ME also considered whether Plaintiff's back condition met Listing 1.04, disorders of the spine.[56] The ME summarized Plaintiff's back injury as a herniation of L4/L5 and L5/S1 discs of

---

[50]   Id.

[51]   Id.

[52]   Id.

[53]   Id.

[54]   Tr. 317.

[55]   Tr. 316.

[56]   Id.

the lumbar spine.[57] Fusion surgery was recommended following the original 2001 injury, but was not authorized under worker's compensation benefits.[58] The ME compared Plaintiff's injury against Listing 1.04, noting that Plaintiff did not meet criteria A because there was no evidence of nerve root compression or decreased motor sensory movement and Plaintiff was still able to ambulate.[59] The ME stated that criteria B had been met for a period in 2001, after Plaintiff's initial disc herniation, but did not last for the necessary period to qualify for disability.[60]

### 5. Vocational Expert Testimony

After reviewing the file and listening to Plaintiff's testimony, the VE stated that Plaintiff could continue to perform sedentary, unskilled work.[61]

The ALJ asked the VE if a hypothetical individual of Plaintiff's age, educational background, and work history could perform certain jobs assuming that the individual would also be restricted to: 1) lifting and/or carrying five to ten pounds occasionally; and 2) sitting approximately six hours in an eight-

---

[57] Tr. 316.

[58] Id.

[59] Id.; See also "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Listing 1.04

[60] Tr. 316.

[61] Tr. 329.

hour day and standing and/or walking with normal breaks for approximately two hours in an eight-hour day.[62]

Presented with this hypothetical, the VE opined that such an individual would be able to perform sedentary, unskilled work.[63] According to the VE, the individual could work as a surveillance system monitor, optical goods worker, or a final assembler, and each of these positions was available in significant numbers in both the regional and national economies.[64]

## II. Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner to deny disability benefits is limited to two issues: 1) whether substantial record evidence supports the decision; and 2) whether proper legal standards were used to evaluate the evidence. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

The widely accepted definition of "substantial evidence" is "something more than a scintilla but less than a preponderance." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000); Brown, 192 F.3d at 496. In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide the issues de novo, or substitute the court's judgment for the

---

[62]  Tr. 328.

[63]  Tr. 329.

[64]  Id.

Commissioner's judgment. <u>Brown</u>, 192 F.3d at 496. The Commissioner is given the responsibility of deciding any conflicts in the evidence. <u>Id.</u> "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405 (g). Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it. <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). In other words, the court is to defer to the decision of the Commissioner as much as is possible without making the court's review meaningless. <u>Brown</u>, 192 F.3d at 496.

The legal standard for determining disability under the Act is whether the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of

      performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and RFC must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994).

    To be entitled to benefits, a claimant bears the burden of proving he is disabled within the meaning of the Act. Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). By judicial practice, this translates into the claimant bearing the burden of proof on the first four of the above steps and the Commissioner bearing it on the fifth. Brown, 192 F.3d at 498; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The analysis stops at any point in the five-step process upon a finding that the claimant is or is not disabled. Greenspan, 38 F.3d at 236.

### III. Analysis

    Defendant moves for summary judgment on the basis that the ALJ's decision comports with the applicable law and is supported by substantial evidence. Plaintiff, however, contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider post-hearing medical evidence in his March 16, 2007, decision. Plaintiff argues this evidence would have had a significant effect on the ALJ's decision. Plaintiff further contends that the ALJ erred by not leaving the record open for thirty days as agreed at the ALJ hearing. Defendant does not respond specifically to the arguments raised by Plaintiff's motion

for summary judgment.

The court first evaluates Plaintiff's argument that by not leaving the record open for thirty days, the ALJ committed a reversible error. Although perhaps inequitable, the ALJ's broken promise alone is not a legal error that requires reversal of the ALJ's decision. The court is required, however, to review the ALJ's decision to ensure that it was legally correct and supported by substantial evidence. To this end, the court may consider whether the ALJ's decision is supported by a full, fair record.

It is the ALJ's duty to develop the facts of the record fully and fairly. Kane v. Heckler, 731 F.2d 1216, 1219 (5th Cir. 1984); Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000). When the ALJ does not develop a full, fair record, he lacks substantial evidence to support his decision. Kane, 731 F.2d at 1219.

Generally, the ALJ's failure to develop an adequate record is not grounds for reversal per se. Kane, 731 F.2d at 1220. The burden is on the plaintiff to show that he was prejudiced by the errors in the record and, had the ALJ done his duty, it may have altered the outcome of the decision. Id.; Carey, 230 F.3d at 142.

Plaintiff's claim that he required additional heart surgery was unsupported by the medical evidence at the time of the administrative hearing. If Plaintiff had been able to substantiate his claim that he needed the additional surgery, he possibly satisfied Listing 4.10. The ALJ recognized this possibility and

stated, "We'll leave the record open" and further stated, "Leave it open for 30 days until March 22."[65]  However, the ALJ issued his decision on March 16, 2007, without waiting for the additional records.  Despite the ALJ's negative decision, on March 21, 2007, Plaintiff submitted additional medical records.  Although submitted within the time frame allowed by the ALJ, these medical records were not included in the record.

In the present case, it is clear that the ALJ did not develop a full, fair record when he issued his decision before the thirty-day window for submitting additional medical evidence had lapsed. Plaintiff's additional medical records, which indicated an abnormal velocity index on Plaintiff's aortic valve, could have helped substantiate Plaintiff's claims that he required revision surgery and directly conflicted with the ME's opinion that Plaintiff was continuing to improve following his April 2005 surgery.  Thus, the records could have affected the outcome of the hearing. [66]

Plaintiff additionally argues that the ALJ erred by not considering Plaintiff's medical records as new and material evidence.

The court may remand a case to the Commissioner for further action if there is a showing that new evidence not in the record "is material and that there is good cause for the failure to

---

[65]   Tr. 329-30.

[66]   Plaintiff's Motion for Summary Judgment, Docket Entry No. 15, Ex. 1, medical records, p. 2.

15

incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g). "For new evidence to be material, there must exist the 'reasonable possibility that it would have changed the outcome of the [Commissioner's] determination'" had the evidence been presented. Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981). Material evidence relates to the period for which benefits were denied, not to later-acquired disabilities or to post-hearing deterioration of Plaintiff's condition. Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985).

In the instant case, Plaintiff's additional medical records meet the qualifications necessary to establish a remand. Because this evidence was unavailable at the hearing and Plaintiff was given thirty days to provide additional medical records to the ALJ, there is a good cause for Plaintiff's failure to include the evidence in the original record.[67] As previously noted, the content of the records may have altered the outcome of the administrative proceedings.

In light of the foregoing, the court finds that the ALJ's decision is not supported by substantial evidence. This case is remanded to the Commissioner for further disposition, with specific instructions that the evidence submitted by Plaintiff before March

---

[67] The court only finds error in the ALJ's failure to consider the March 2007 medical records. However, later medical records, including records from Plaintiff's October 2007 heart surgery, constitute a post-hearing worsening of Plaintiff's symptoms, and as such, do not meet the definition of material evidence.

22, 2007, must be considered by the ALJ. In reconsidering Plaintiff's case in light of this memorandum, the Commissioner may take any action necessary to complete the administrative record and issue a new decision. The court cautions Plaintiff that it is not wholly apparent that this reconsideration will alter the substance of the current disability determination.

### IV. Conclusion

Based on the foregoing, Plaintiff's motion is **GRANTED**, Defendant's cross-motion is **DENIED**, and the case is **REMANDED** to the Commissioner for reconsideration consistent with this opinion.

**SIGNED** at Houston, Texas, this 6th day of June, 2008.

Nancy K. Johnson
United States Magistrate Judge